UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-11891-RGS

FINSIGHT I LP

v.

ROBERT SEAVER and JAMES TOGA

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

February 10, 2022

STEARNS, D.J.

This is a case arising from the alleged breach of a Stock Transfer Agreement between plaintiff FinSight I LP (FinSight) and defendants Robert Seaver and James Toga for the purchase of capital stock shares of Unity Technologies, Inc. (Unity). Upon the close of discovery, defendants moved for summary judgment, claiming that FinSight failed to demonstrate the existence of a triable issue. After careful review of the parties' briefs and the factual record, the court will grant defendants' motion.

## BACKGROUND

At all times relevant to this litigation, defendants owned certain shares of Unity stock. Defs.' Statement of Material Facts (SMF) ¶ 3. In early June

of 2020, defendants negotiated with FinSight over the terms of a proposed Stock Transfer Agreement (STA) for the sale and transfer of defendants' Unity shares. *Id.* ¶ 13. The opening paragraph of the negotiated STA provides: "This Stock Transfer Agreement (this 'Agreement') is made and entered into as of [June 11, 2020] by and among the sellers [defendants] . . . (the 'Transferor'), Finsight I LP . . . (the 'Transferee'), and Unity Technologies, Inc. . . . (the 'Company')." Defs.' Ex. 10 (STA) at 2. On June 12, 2020, defendants electronically signed the STA. SMF ¶ 26. Three days later, FinSight's in-house lawyer, Roman Klein, emailed defendants the STA with a signature from FinSight's authorized signatory. *Id.* ¶¶ 27-29. Unity's signature block was left empty and unsigned. Defs.' Ex. 10 at 14.[1]

The parties then reached out to Unity to request approval of the terms of the STA. SMF ¶ 43. On July 20, 2020, Unity's Board of Directors issued an "Action by Unanimous Consent" authorizing defendants to sell the shares to FinSight provided that the parties execute a "secondary stock purchase

---

[1] During negotiations, the parties agreed to include a clause providing that defendants could terminate the STA if the closing did not occur within a specified time period. SMF ¶¶ 20-25. The clause states: "If the Closing has not taken place within 7 business days of [June 11, 2020], other than due to a breach of this Agreement by Transferor, Transferor shall have the right to terminate this Agreement immediately via email without further notice to Transferee." Defs.' Ex. 10 at 3. The STA also states that its terms "will be governed by and construed in accordance with the laws of the State of Delaware." *Id.* at 11.

agreement" with Unity. *Id.* ¶¶ 45-47. On July 29, 2020, Klein emailed defendants two documents, both titled "Secondary Stock Purchase Agreement," that he stated were "the final drafts of STAs that [FinSight] agreed on with [Unity]." *Id.* ¶¶ 48-49. Defendants did not engage in any discussions with Unity concerning the terms of these new agreements. *Id.* ¶ 51.

On August 3, 2020, Seaver emailed FinSight and said that he and Toga were "going to have to pass on moving forward with this." *Id.* ¶ 61. The following day, Seaver sent another email to FinSight, stating:

> [T]o the extent the [STA] was ever in effect, pursuant to Section 2.1, we can terminate the agreement if the transaction has not closed within 7 days of the date of this agreement. The agreement is dated June 15, 2020. If the agreement is in effect, we hereby terminate it pursuant to that clause. In addition, Unity has said that they will not proceed under that agreement, therefore further performance under the agreement is impossible.

*Id.* ¶ 62. Defendants did not execute the new agreements. *Id.* ¶ 63. On October 20, 2020, FinSight filed the instant suit. *See* Dkt # 1.

## DISCUSSION

"Summary judgment is warranted if the record, construed in the light most flattering to the nonmovant, 'presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law.'" *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 21 (1st Cir.

3

2018), quoting *McKenney v. Mangino*, 873 F.3d 75, 80 (1st Cir. 2017). The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If this is accomplished, the burden then "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the nonmoving party." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990).

    *(1) Counts I & II – Breach of Contract*

Defendants maintain that because Unity never agreed to and signed the STA, the STA was never fully executed – thus, there is no enforceable agreement. FinSight counters that, notwithstanding Unity's failure to sign the STA, FinSight and defendants both intended to be bound by the STA when they signed it. The court agrees with defendants.

"[A] valid contract exists when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2018). In cases where an agreement is reduced to writing and "a number of persons are named therein

as parties, a portion of whom sign the same and a portion of whom do not affix their signatures," the enforceability of the contract against parties that *did* sign the agreement is "determined by the intention and understanding of the parties at the time of the execution of the instrument."  *Schutzman v. Gill*, 154 A.2d 226, 229 (Del. Ch. 1959).

Here, the parties clearly did not intend to be bound by the terms of the STA unless Unity signed and executed the agreement.  Klein, in sending defendants the STA with FinSight's signature, stated plainly that FinSight would "consider the [STA] to be executed in full *only after the final signatory executes it*."  SMF ¶ 27 (emphasis added).  Unity – the only party yet to sign the STA – was unambiguously "the final signatory" to the agreement.  Klein even admitted in his deposition testimony that the STA had not been fully executed because Unity had never signed it.  *Id.* ¶ 67.  As the STA is not an enforceable agreement, FinSight's breach of contract claims necessarily fail.[2]

Even assuming *arguendo* that the STA did constitute an enforceable agreement, defendants would not be liable to FinSight because defendants properly exercised their termination rights under the STA.  *See* Defs.' Ex. 10

---

[2] Because there is no enforceable contract, Count III of the Complaint – alleging breach of the implied covenant of good faith and fair dealing – also fails.  *See Wood v. Baum*, 953 A.2d 136, 143 (Del. 2008) ("The implied covenant of good faith and fair dealing is a creature of contract . . . .").

at 3. Unity's assent to the sale of defendants' shares was not given within seven business days of the parties' signing of the STA, and the closing of the transaction never took place. Thus, had the STA been enforceable, defendants were within their rights to terminate the agreement "immediately via email without further notice to [FinSight]." *Id.*

*(2) Count IV – Promissory Estoppel*

FinSight's promissory estoppel claim similarly fails. To succeed on a claim for promissory estoppel,

> a plaintiff must show by clear and convincing evidence that: (i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise.

*Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000). Put simply, FinSight cannot claim to have reasonably relied on defendants' promise to sell their shares when Klein informed defendants that FinSight would not consider the promises made in the STA to be enforceable until Unity executed the agreement.

*(3) Count V – Unjust Enrichment*

Finally, FinSight's unjust enrichment claim is unavailing. "The elements of unjust enrichment are: (1) an enrichment, (2) an

6

impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1131 (Del. 2010). As defendants point out in their motion, they were not enriched by deciding not to sell their shares to FinSight. Rather, defendants "simply retained possession of the shares they already owned." Defs.' Mem. (Dkt # 23) at 20.[3]

## ORDER

For the foregoing reasons, the court ALLOWS defendants' motion for summary judgment.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[3] Further, under Delaware law, courts have found that no action for unjust enrichment lies where a contract governs the parties' relationships to each other. *See, e.g., McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.2d 1087, 1091 (9th Cir. 2003).